UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMAN KAUR, SNEHA DSOUZA,

                              Plaintiffs,

                    -v-

ALEJANDRO MAYORKAS, *in his official capacity as
secretary, U.S. Department of Homeland Security*, UR
MENDOZA JADDOU, *in her official capacity as Director,
U.S. Citizenship and Immigration Services*, UNITED
STATES CITIZENSHIP & IMMIGRATION SERVICES,

                              Defendants.

---

22 Civ. 4514 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Aman Kaur and Sneha Dsouza bring claims against defendants United States

Citizenship and Immigration Services ("USCIS"), Alejandro Mayorkas, in his official capacity

as Secretary of the United States Department of Homeland Security ("DHS"), and Ur Mendoza

Jaddou, in her official capacity as Director of USCIS (collectively, "defendants" or "the

Government"). Dkt. 1 ("Complaint" or "Compl."). Kaur and Dsouza claim that defendants have

unreasonably and unlawfully delayed agency action with respect to their pending Form I-526

petitions for employment-based immigration visas through the EB-5 Immigrant Investor

Program.[1]  *Id.* ¶¶ 1–2, 5.  They seek an order compelling defendants to adjudicate their

---

[1] The pleadings and attached documents do not make clear why Dsouza and Kaur, who submitted
separate Form I-526 petitions, elected to file suit in the same case.  The Complaint states that
plaintiffs each made investments in the same "restaurant project" and that they "build and
operate [the] development together," but it does not indicate any other personal or business
relationship between them.  Compl. ¶¶ 2, 12.  In any event, the Court is not aware of, and neither
party has notified the Court of, any way in which the nature of the relationship between the
plaintiffs impacts the adjudication of their claims.  Accordingly, the Court considers plaintiffs'
claims as if they had filed separate suits.  Given the similarity of the basis of their petitions, their

applications within 15 days, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 555(b) and 706(1), as well as mandamus relief under 28 U.S.C. § 1361. *Id.* ¶¶ 1, 46. Now

before the Court is defendants' motion to dismiss the Complaint under Federal Rule of Civil

Procedure 12(b)(6). Dkt. 22 ("Mot."). For the following reasons, the Court grants the motion to

dismiss.

## I.   Background

### A.   Factual Background[2]

---

individual circumstances, and the timing of their applications, the Court reaches the same conclusion as to both plaintiffs.

[2] The facts are largely drawn from the Complaint. For the purpose of resolving the motion to dismiss, the Court assumes all factual allegations in the Complaint to be true and draws all reasonable inferences in favor of the nonmoving party. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court also considers, for the truth of their contents, the documents attached to plaintiffs' opposition brief and USCIS's publicly posted visa processing times, which are incorporated by reference, *see* Compl. ¶ 38; Opp. at 16 & n.8. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("[D]istrict courts may permissibly consider documents other than the complaint for the truth of their contents if they are attached to the complaint or incorporated in it by reference." (citation omitted)).

Furthermore, the Court takes judicial notice of public information posted on USCIS's website, including (1) the EB-5 immigrant investor information page; (2) a question-and-answer page regarding the EB-5 visa application process; (3) the press release announcing a shift in the processing of Form I-526 petitions; and (4) the visa availability and priority dates information page. *See Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) ("When considering a motion made pursuant to Rule 12(b)(6)[,] we may take judicial notice of documents from official government websites." (citation omitted)); *Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking judicial notice of U.S. Army Corps of Engineers's website); Fed. R. Evid. 201 (permitting judicial notice of facts "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Several courts deciding unreasonable-delay claims have taken judicial notice where, as here, the authenticity of USCIS's website is not in dispute and plaintiffs themselves cited to it. *See, e.g., Sheiner v. Mayorkas*, No. 21 Civ. 5272 (ER), 2023 WL 2691580, at *2–4, nn.6–11 (S.D.N.Y. Mar. 29, 2023); *Cohen v. Jaddou*, No. 21 Civ. 5025 (PAC), 2023 WL 2526105, at *3 (S.D.N.Y. Mar. 15, 2023) ("[C]ourts often take notice of USCIS publications when adjudicating APA claims."); *Lyons v. U.S. Citizenship & Immigr. Servs.*, No. 21 Civ. 3661 (JGK), 2023 WL 144879, at *3 (S.D.N.Y. Jan. 10, 2023); *see also, e.g., Bega v. Jaddou*, No. 22 Civ. 2171 (BAH),

### 1.    Parties

Kaur is a citizen of India residing in New York City.  Compl. ¶ 10.  She is currently

pursuing a certificate in prosthodontics at the Jonathan & Maxine Ferencz Advanced Education

Program at New York University College of Dentistry in New York, where she receives formal

instruction and training and treats patients.  *Id.* ¶ 6.  Kaur earlier obtained a bachelor's degree in

dental surgery in India and completed a one-year orthodontic internship at the University of

Texas Health San Antonio School of Dentistry.  *Id.*  Her internship involved treating patients

with facial deformities, crowding of teeth, and orthognathic surgery, as well as working on

various research studies.  *Id.*  Kaur's dental patients require full mouth rehabilitations, dentures,

implants, and maxillofacial prosthetics, procedures beyond the scope of work of a generalist

dentist; some of her patients have special needs.  *Id.*  With the support of a research grant, she is

conducting a study titled "Stain Resistance of 3 Different Manufacturers of Artificial Teeth: An

In-Vitro Study."  *Id.*  She treats patients five days a week and has been exposed to COVID-19, as

well as other contagious diseases, in the course of her work.  *Id.*  She "experiences great stress as

she risks her own health to treat Americans during the COVID-19 pandemic."  *Id.* ¶ 27.

Dsouza is also a citizen of India and resides in Arlington, Texas.  *Id.* ¶ 11.  She is

currently pursuing a master's degree in business administration and management at the

University of the Cumberlands in Dallas, Texas, to improve her healthcare managerial skills.  *Id.*

¶ 7.  Dsouza earlier obtained a degree in physical therapy in India and graduated from Dallas

Baptist University with a master's degree in kinesiology in May 2019.  *Id.*  Between August 14,

2019, and November 2021, Dsouza worked as a physical therapist assistant in Arlington, Texas;

---

2022 WL 17403123, at *3 (D.D.C. Dec. 2, 2022); *cf. United States v. Garcia*, 855 F.3d 615,
621–22 (4th Cir. 2017) (upholding taking of judicial notice of USCIS website).  For those web
pages not referenced by plaintiffs, the Court takes judicial notice "in order to determine what
statements" the web pages contained and "not for the truth of the matters asserted."  *Roth v.
Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation, emphasis, and alteration omitted).

in that role, she helped treat patients with injuries requiring musculoskeletal, neurological, and cardiac rehabilitation, as well as post–COVID-19 patients with lung and cardiac rehabilitation, *id.* ¶ 7, and "risked her own health helping Americans regularly with post-COVID-19 and others[,] not knowing if they would infect her with COVID-19," *id.* ¶ 28.

USCIS is the agency within DHS responsible for administering the EB-5 program. *Id.* ¶ 13. Mayorkas and Jaddou are sued in their official capacities as the Secretary of DHS and the Director of USCIS, respectively. *Id.* ¶¶ 14–15.

### 2.   The EB-5 Visa and Application Process

Section 203(b)(5) of the Immigration and Nationality Act ("INA") allows a foreign national to secure Lawful Permanent Resident ("LPR") status by applying for an employment-based, fifth-preference EB-5 visa. *Id.* ¶ 17; 8 U.S.C. § 1153(b)(5). An applicant can obtain an EB-5 visa by investing lawfully obtained capital in a commercial enterprise that will create or save 10 or more jobs for qualified U.S. workers. Compl. ¶ 17; 8 U.S.C. § 1153(b)(5). At the time relevant here, a $500,000 investment in a "targeted employment area" was a qualifying investment. Compl. ¶ 17; 8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f)(2).[3]

The process of obtaining an EB-5 visa involves three steps. First, a petitioner must file an I-526 application with supporting documents demonstrating that her investment is "at-risk," the source of the investment funds is lawful, and the project will create 10 or more full-time jobs for qualified U.S. workers. Compl. ¶ 20; 8 U.S.C. § 1153(b)(5)(A), (D).

Second, the petitioner must secure conditional two-year permanent residency. Compl. ¶ 21. An EB-5 applicant may file for adjustment of her immigration status after her I-526

---

[3] USCIS has since changed the amount of capital required for a qualifying investment, such that, through October 1, 2024, investments of $900,000 or more in a "targeted employment area" qualify for EB-5 visas. 8 C.F.R. § 204.6(f)(2); *see also* Dkt. 24 ("Opp.") at 24.

application has been approved or, beginning in 2022, at the time that she files her application.
Compl. ¶ 21 & n.1; Mot. at 18; 8 U.S.C. § 1255(n).  USCIS will approve an adjustment-of-status
application only if the petition's priority date—in most cases, the date the I-526 application was
accepted by USCIS for processing and/or filed—is "current."  Compl. ¶ 21; Mot. at 5 n.4; *see
also* 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54.  The priority date of an application is "current" when
a visa for that category and country of chargeability is available. *Visa Availability and Priority
Dates*, USCIS, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-
availability-and-priority-dates (last visited July 21, 2023) ("USCIS, *Visa Availability and
Priority Dates*").

As the final step to securing a visa, an EB-5 visa applicant must file an I-829 petition
within the 90-day period immediately before the applicant reaches two years as a conditional
permanent resident.  Compl. ¶ 22; *EB-5 Immigrant Investor Process*, USCIS,
https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-
immigration-fifth-preference-eb-5/eb-5-immigrant-investor-process (last visited July 21, 2023)
("USCIS, *EB-5 Immigrant Investor Process*").  In such a petition, the EB-5 visa applicant must
demonstrate that her investment was maintained throughout the two-year conditional residency
period and that the investment in fact created 10 full-time jobs for qualified U.S. workers.
Compl. ¶ 22.  Once the petition is granted, the applicant secures LPR status without any
conditions.  USCIS, *EB-5 Immigrant Investor Process*.  The EB-5 visa applicant can thereafter
recover her investment.  Opp. at 23.  The Complaint alleges that USCIS takes "two to four years"
to review I-829 petitions and has a "backlog of over 11,000 applicants."  Compl. ¶ 36 n.5.

### 3.   Plaintiffs' Pending I-526 Applications and Current Status

On October 25, 2019, Kaur filed her I-526 application.  Compl. ¶ 24.  On November 1,
2019, Dsouza filed her I-526 application.  *Id.*  Each made a direct investment of $500,000 to

build, open, and operate two restaurants and a gas station in Dunnigan, California. *Id.* ¶¶ 2, 12, 24. The Complaint represents that plaintiffs' I-526 petitions are "fully documented with evidence demonstrating that their investment capital in the EB-5 Project came from a lawful source, and that the EB-5 project will be built and create the required number of jobs for U.S. workers in an area of high unemployment," and that Kaur and Dsouza "have complied with all requirements to be classified as EB-5 immigrant investors." *Id.* ¶¶ 25–26. This includes paying the $3,675 user fee to file the I-526 application, a fee that plaintiffs allege, without specific support, "would cover a day or so of an adjudicator's time." *Id.* ¶ 39; Opp. at 24.

Plaintiffs have a current priority date, but their I-526 applications remain undecided. Compl. ¶ 38. Following updates in 2022 of the protocols for adjustment of status, plaintiffs filed their adjustment-of-status applications and "were granted interim work permits, but not travel permits called 'Advanced Parole.'" Opp. at 8 n.2.

On October 13 and 17, 2022, Kaur and Dsouza, respectively, submitted requests to USCIS to expedite consideration of their applications. Opp. at 7, 11. On October 28, 2022, USCIS denied their requests. *Id.* at 8, 11.

The Complaint alleges that, since plaintiffs filed their applications:

They have endured great stress all the while not knowing whether they will be able to remain in the United States as permanent residents. Their capital remains invested during the pandemic and now remains at risk due to uncertain economic conditions caused by high inflation and the war in Europe threatening the economy. They seek security to remain in the United States and for return of their capital to invest in a secure way, not in the high risk restaurant industry, which is so vulnerable to loss in a pandemic or recession. They are also stressed and with very large investments at risk of loss.

*Id.* ¶ 37.

In opposing the motion to dismiss, plaintiffs have attached declarations elaborating on the stress they have experienced as healthcare workers during the pandemic.[4]  Opp. at 11.  Kaur states:

> I am masked and wear Personal Protective Equipment but still am in close contact with patients and risked getting COVID-19.  I have experienced great stress as I risk my own health to treat Americans during the COVID-19 pandemic, which has killed over one million Americans, including dentists, doctors and nurses . . . Uncertain immigration status adds to my stressful residency program; long hours treating people in a pandemic.

*Id.*  She adds that, because her I-526 application remains pending, she cannot travel abroad without abandoning her adjustment-of-status application.  Opp. at 12.  This has prevented her from traveling to India to marry.  *Id.*  Dsouza states:

> I worked with authorization as a physical therapist assistant during the pandemic, helping post-COVID-19 patients with lung and cardiac rehabilitation, as well as rehabilitation and treatment of patients with injuries involving musculoskeletal, neurological and cardiac rehabilitation to re-gain functional independence.  In this position helping Americans, I risked my health and safety . . . I was also under severe stress . . .  Personally, seeing the effect of long term COVID was very scary . . . .  Not knowing whether my immigration to the U.S. will be approved or not has added great stress on top of the COVID stress I endured.

*Id.*

As of the filing of the Complaint, Kaur and Dsouza's I-526 applications had been pending for approximately 31 months.  Compl. ¶ 24.  As of the filing of this decision, their applications have been pending for approximately 45 months.

### B.    Procedural History

On June 1, 2022, plaintiffs filed the Complaint, alleging unlawful delays in agency action in responding to their petitions for Form I-526 visas and seeking mandamus and/or APA relief.

---

[4] Plaintiffs also attached studies and articles documenting the adverse health effects of long-term uncertainty as to one's future and "fear of the unknown," and governmental press releases noting the increased stress on healthcare workers presented by COVID-19.  Opp. at 11, 21–22, Ex. 3.

Dkt. 1.  On December 6, 2022, defendants moved to dismiss and filed a supporting memorandum of law.  Dkts. 21, 22 ("Mot.").  On December 7, 2022, the Court ordered plaintiffs to file any amended complaint or opposition to the motion to dismiss by December 29, 2022.  Dkt. 23.  On December 29, 2022, plaintiffs filed their opposition.  Dkt. 24 ("Opp.").  On January 6, 2023, defendants filed their reply.  Dkt. 25 ("Reply").[5]

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *see Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

---

[5] Defendants have since, in a series of letters, brought new case law to the Court's attention.  On January 13, 2023, defendants noted *Lyons v. U.S. Citizenship & Immigr. Servs.*, No. 21 Civ. 3661 (JGK), 2023 WL 144879 (S.D.N.Y. Jan. 10, 2023); *Punt v. U.S. Citizenship & Immigr. Servs.*, No. 22 Civ. 1218 (RC), 2023 WL 157320 (D.D.C. Jan. 11, 2023); and *Osechas Lopez v. Mayorkas*, --- F. Supp. 3d ---, 2023 WL 152640 (S.D. Fla. Jan. 10, 2023).  Dkt. 26.  On January 17, 2023, plaintiffs responded.  Dkt. 27.  On March 3, 2023, defendants noted *Olofin v. U.S. Citizenship & Immigr. Servs.*, No. 22 Civ. 1684 (DLF), 2023 WL 1860962 (D.D.C. Feb. 9, 2023), and *Ramesh v. Mayorkas*, No. 21 Civ. 652, Dkt. No. 44 (N.D. Cal. Feb. 7, 2023).  Dkt. 28.  On March 8, 2023, plaintiffs responded.  Dkt. 29.  On March 16, 2023, defendants noted *Cohen v. Jaddou*, No. 21 Civ. 5025 (PAC), 2023 WL 2526105 (S.D.N.Y. Mar. 15, 2023).  Dkt. 30.  That day, plaintiffs responded.  Dkt. 31.  On March 30, 2023, defendants noted *Sheiner v. Mayorkas*, No. 21 Civ. 5272 (ER), 2023 WL 2691580 (S.D.N.Y. Mar. 29, 2023).  Dkt. 32.  On June 28, 2023, defendants noted *Ferro v. Mayorkas*, No. 23 Civ. 2033, Dkt. 71 (C.D. Cal. June 16, 2023).  Dkt. 33.

## III.    Discussion

The Court first considers plaintiffs' APA challenge and then considers their bid for

mandamus relief.

### A.    Relief Under the APA

The APA requires that, "within a reasonable time," an "agency shall proceed to conclude

a matter presented to it."  5 U.S.C. § 555(b).  Where agency action is "unlawfully withheld or

unreasonably delayed," a reviewing court shall "compel" such action.  *Id.* § 706(1).  In assessing

the reasonableness of an agency's delay in adjudicating a matter before it, courts rely upon the

considerations set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70

(D.C. Cir. 1984) ("*TRAC*").  *See Nat. Res. Def. Council v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013).

The six factors of the *TRAC* standard are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of
> reason;
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory
> scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less
> tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency
> activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in
> order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).

In assessing an allegedly unreasonably delayed agency action, courts consider the factors

in the aggregate, assigning the most weight to the first factor—whether the time taken to make a

given decision is governed by a "rule of reason."[6]  *See Saharia v. U.S. Citizenship & Immigr.*

---

[6] Plaintiffs, while citing the *TRAC* factors in their Complaint and briefing, note that some courts
have declined to apply the *TRAC* analysis on a motion to dismiss.  *See* Opp. at 15.  Indeed, "the

*Servs.*, No. 21 Civ. 3688 (NSR), 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022). For the

following reasons, the Court finds that the first and fourth *TRAC* factors favor defendants; the

second, third, and fifth favor plaintiffs; and the sixth is neutral. Weighing the factors

individually and considering them in combination, the Court finds that the Complaint does not

state a claim under the APA.

### 1.   First *TRAC* Factor

The first *TRAC* factor—whether an agency's time to act is "governed by a 'rule of

reason'"—is the "most important." *Cohen*, 2023 WL 2526105, at *3 (quoting *In re Core

Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)); *see, e.g.*, *Mashpee Wampanoag Tribal

Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (deeming first factor the "ultimate

issue"). It inquires "whether there is 'any rhyme or reason' for the Government's delay," in

other words, "whether the agency's response time . . . is governed by an identifiable rationale."

*Sheiner*, 2023 WL 2691580, at *5 (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49–50 n.5

(D.D.C. 2021)); *see also Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 11 (D.D.C. 2021).

---

*TRAC* analysis is a fact-intensive test," *Lyons*, 2023 WL 144879, at *4 (quoting *Saharia*, 2022 WL 3141958, at *4), that may in some cases require further development of an evidentiary record as to the specific circumstances of an alleged delay. However, as to claims regarding Form I-526 adjudication, which turn in part on the operation of a government agency and the rationality of its public processes, "[t]he weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery," *Sheiner*, 2023 WL 2691580, at *5 n.12 (citation omitted). *See, e.g., id.* (applying *TRAC* factors on motion to dismiss and citing cases that do so); *Cohen*, 2023 WL 2526105, at *3 (applying *TRAC* factors on motion to dismiss where "both parties' briefs relied extensively on the factors" and noting that "courts often apply them at this stage"); *Saharia*, 2022 WL 3141958, at *3–4 (applying *TRAC* factors on motion to dismiss); *cf. Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 10 n.6 (D.D.C. 2021) ("[I]t is not uncommon for courts here to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion.").

Accordingly, this Court, while mindful that its role on a motion to dismiss is "not determining whether there has been an unreasonable delay," but rather "determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay," *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (citation omitted), adopts the approach taken by other courts and considers the *TRAC* factors on this motion.

"Whether the agency follows a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful.'" *Saharia*, 2022 WL 3141958, at *4 (quoting *Mashpee*, 336 F.3d at 1102). Indeed, "adopting a bright-line rule for [the] reasonableness of an immigration-related delay would undermine the fact-specific nature of the *TRAC* inquiry," which requires consideration of "the particular facts and circumstances of each case." *Lyons*, 2023 WL 144879, at *5–6 (citations omitted). The first factor turns in large part on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Saharia*, 2022 WL 3141958, at *4 (quoting *Mashpee*, 336 F.3d at 1102).

As recounted above, the process of obtaining an EB-5 visa entails three steps: (1) filing an I-526 application that demonstrates that the investment meets the statutory requirements; (2) requesting adjustment of immigration status in order to secure conditional two-year permanent residency; and (3) submitting an I-829 petition within the 90-day period immediately before the two-year conditional permanent residency period is complete. *See* Compl. ¶¶ 20–22. Subject to certain exceptions, the INA limits the total number of immigrant visas that may be issued to employment-based immigrants each year, as well as the annual number of visas issued per country of chargeability and visa category. *See* 8 U.S.C. §§ 1151, 1152(a)(2), 1153(b)(5); *see also* Mot. at 5 n.4. Thus, EB-5 visas can make up no more than 7.1% of the total number of visas granted. 8 U.S.C. §§ 1152, 1153(b)(5)(A). When demand for an employment-based visa exceeds the supply of available visas, a waitlist forms. 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54; *see also* Mot. at 5 n.4.

Since March 2020, USCIS has used the "visa availability" approach to process I-526 applications. Compl. ¶ 38. Under this approach, USCIS prioritizes the processing of

11

applications from petitioners from countries for which visas are available, rather than reviewing applications in the order in which they were filed. *Id.* In order to determine which Form I-526 petitions should be processed first, USCIS assesses the petitioner's country of birth against the Department of State's Monthly Visa Bulletin, which indicates visa availability for that country. *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last visited July 21, 2023) ("USCIS, *Questions and Answers*"). For the subset of I-526 applications for which a visa number is available or will be available soon, USCIS processes those applications on a "first-in, first-out" basis. *See id.* ("Workflows are generally managed in FIFO order when a visa is available or will be available soon."); *see also* Mot. at 6. Each EB-5 visa applicant's place in line is dictated by the applicant's priority date, which usually corresponds with the date her Form I-526 petition was filed. *See* 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54; *see also* Mot. at 5 n.4. USCIS has implemented the visa availability approach with respect to all Form I-526 petitions pending as of or filed after March 31, 2020. USCIS, *Questions and Answers*. Each month, USCIS posts case processing times—that is, "how long it took [USCIS] to complete 80% of adjudicated cases over the past six months"—for Form I-526 petitions by category of investor. *See id.*; *Check Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times (last visited July 21, 2023) ("USCIS, *Case Processing Times*").

As alleged, USCIS adopted the visa availability approach to speed up the processing time for immigrant visas; earlier, when USCIS previously processed applications on a purely first-in, first-out basis, newer applications from immigrants for whom a visa was available languished

behind older applications from immigrants from oversubscribed countries.  Compl. ¶ 38; Opp. at

18–19.  In a press release announcing the shift, USCIS stated that this approach better "aligns

with other visa-availability agency adjudications processes, is more consistent with

congressional intent for the EB-5 Immigrant Investor Program, and increases fairness in the

administration of the program."  Press Release, *USCIS Adjusts Process for Managing EB-5 Visa

Petition Inventory*, USCIS (Jan. 29, 2020), https://www.uscis.gov/archive/uscis-adjusts-process-

for-managing-eb-5-visa-petition-inventory (last accessed July 23, 2023) ("USCIS Press

Release") (noting that shift to visa availability approach "simply gives priority to petitions where

visas are immediately available, or soon available" and does "not create legally binding rights or

change substantive requirements").  USCIS added that, in shifting to the visa availability

approach, it "considered potential adverse impacts and reliance interests, such as delays for those

with already pending petitions from oversubscribed countries," and nonetheless determined that

the visa availability approach would render "many benefits," including "immediate relief for

certain petitioners from underrepresented countries currently subject to significant wait times."

*See* USCIS, *Questions and Answers*.

Joining the significant majority of courts to have considered the question, the Court holds

that USCIS's visa availability approach constitutes a "rule of reason," *TRAC*, 750 F.2d at 80,

governing its processing times for Form I-526 petitions, and that the first *TRAC* factor thus

weighs in the Government's favor.  *See, e.g.*, *Sheiner*, 2023 WL 2691580, at *6; *Cohen*, 2023

WL 2526105, at *4; *Saharia*, 2022 WL 3141958, at *5; *Palakuru*, 521 F. Supp. 3d at 51; *Jain v.

Renaud*, No. 21 Civ. 3115 (VKD), 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021); *Desai v.

U.S. Citizenship & Immigr. Servs.*, No. 20 Civ. 1005 (CKK), 2021 WL 1110737, at *5 (D.D.C.

Mar. 22, 2021).

In so holding, the Court does not opine on whether the mechanics of USCIS's chosen method of processing applications are optimally efficient, or whether a different alignment of agency priorities would be equally or more defensible. The first factor instead inquires only "whether the agency's response time . . . is governed by an identifiable rationale," *Sheiner*, 2023 WL 2691580, at *5 (quoting *Palakuru*, 521 F. Supp. 3d at 49–50 n.5). Based on the facts before the Court, USCIS's approach—to first prioritize applicants based on visa availability and then process the prioritized applications by date, with the aim of improving processing times for applicants from countries with available visas—is clearly sufficiently identifiable, reasonable, and defensible, especially given the limited availability of visas by country and category. Various features of the adjudication process with respect to Form I-526 petitions reinforce this conclusion. These include the "complexity of the task," *Mashpee*, 336 F.3d at 1102, of ensuring that a Form I-526 petitioner has demonstrated that her investment is at-risk, lawfully sourced, and compliant with the job-creation requirements, *see* Compl. ¶ 20; the "significance (and permanence) of the outcome," *Mashpee*, 336 F.3d at 1102, of granting or denying an EB-5 visa; and the (presumably) limited resources available to USCIS in contending with the vast number of applications it faces, *see id.*

Plaintiffs do not seriously dispute that the visa availability approach supplies a rule of reason for USCIS's adjudication of Form I-526 petitions. They nevertheless contend that the first *TRAC* factor weighs in their favor. Each of their arguments fail.

First, plaintiffs claim that the delay in adjudicating their petitions is unreasonable *per se* as it is contrary to Congress's intent for prompt Form I-526 petition adjudication. *See* Compl. ¶¶ 33–35; Opp. at 15–19. Defendants counter that plaintiffs' Form I-526 petitions have not been

pending for a *per se* unreasonable period of time, and indeed have been pending for less than the average processing time for 80% of Form I-526 petitions by Indian nationals. Mot. at 13, 15.

The time it has thus far taken to adjudicate plaintiffs' applications is undeniably long and assuredly dispiriting to the good-faith applicants. But, the Court cannot find it unreasonable *per se*, given that the basis for the long wait time is the volume of demands on the agency created by the volume of immigrant petitions and the limited resources furnished to the agency to carry out this mission. As of the date the motion to dismiss was filed, the case processing time for Form I-526 petitions by Indian nationals was 47 months; today, it is 52 months. Mot. at 15; USCIS, *Case Processing Times*. At the time they filed their Complaint, plaintiffs' applications had been pending for a somewhat shorter period, approximately 31 months; adding the time it has taken to litigate this case through to today's decision, it is 45 months.[7] Courts, including in this District, have declined to find similar wait times unreasonable where these were less than average and median processing times. *Sheiner*, 2023 WL 2691580, at *6–7 (finding delay not unreasonable where plaintiff's Form I-526 petition had been pending for 37 months, which was less than the average processing time); *Cohen*, 2023 WL 2526105, at *4 (finding delay in processing application which had been pending for 41 months "not unreasonable as a matter of law" because 80% of similarly situated petitions were pending for longer); *see also Da Costa v. Immigr. Investor Prog. Off.*, No. 22 Civ. 1576 (JEB), 2022 WL 17173186, at *10 (D.D.C. Nov. 16, 2022) ("Although no bright lines have been drawn in this context, district courts have

---

[7] Although the period of time in which an application has been pending is typically measured from the date that the Form I-526 petition was filed to the date of the complaint, or initiation of the case, courts have also considered the date of the filing or resolution of the motion to dismiss. *See, e.g., Lyons*, 2023 WL 144879, at *2, *4 (counting from date of motion to dismiss); *Saharia*, 2022 WL 3141958, at *1 (counting from date of decision); *Sheiner*, 2023 WL 2691580, at *4, *6 (counting from date of complaint and decision); *Cohen*, 2023 WL 2526105, at *4 (counting from date of decision). The Court accordingly also considers both time periods here.

generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citation omitted)), *appeal filed*, No. 22-5313 (D.C. Cir.). The Court does not find that "USCIS's 'normal' processing time is necessarily a 'reasonable' processing time." *Lyons*, 2023 WL 144879, at *6. But the median wait times are instructive as to the reasonableness of the delay in adjudicating plaintiffs' applications.[8]

In arguing that the processing time of their applications is unreasonable, plaintiffs note that Congress envisioned "prompt I-526 petition adjudication," Compl. ¶ 33, and argue that it is poor policy for applicants to have to "wait years for a decision on their immigrant petition" in light of the substantial process that follows the favorable adjudication of a Form I-526 petition, *id.* ¶ 34. There is logic to this global policy critique. But it is more properly addressed to the political branches responsible for allocating resources to USCIS than to a court called upon to resolve an individual applicant's claim. An applicant's APA challenge of necessity must be evaluated in light of the overall press of business confronting the agency and treatment of the individual applicant compared to the norm, keeping in mind that, given finite agency resources, a court order that a plaintiff applicant be skipped ahead stands to equally set back the applicant(s) whom the order allows the plaintiff to bypass. Plaintiffs' argument that USCIS's shift to the visa availability approach is an "explicit admission that lengthy EB-5 petition processing times are

---

[8] Plaintiffs' case authority does not compel a different result. *Keller Wurtz v. U.S. Citizenship & Immigr. Servs.*, No. 20 Civ. 2163 (JCS), 2020 WL 4673949 (N.D. Cal. Aug. 12, 2020), is factually distinct, because USCIS had already approved the investment project underlying the plaintiff's investment, *id.* at *4. In any event, that decision does not hold median processing times irrelevant. *Velagapudi v. U.S. Citizenship & Immigr. Servs.*, No. 22 Civ. 295 (SRW), 2022 WL 4447409 (E.D. Mo. Sept. 23, 2022), found it inappropriate to dismiss, without discovery, a complaint challenging a delay in processing an immigration application as unreasonable. *Id.* at *6. The authority in this Circuit, however, has not required further factual development where the *TRAC* factors, on the face of the Complaint, do not plausibly allege unreasonable delay. *See supra* note 6.

not in line with Congressional intent," Opp. at 18–19, does not change this assessment. The operative question as to the first *TRAC* factor is whether "there is any rhyme or reason for the Government's delay," *Sheiner*, 2023 WL 2691580, at *5 (citation omitted), not whether an agency's adjudication process optimally satisfies statutory goals. That USCIS adopted a new approach with the aim to better achieve Congress's prompt-adjudication goal, in fact, undermines the claim that USCIS's processes with respect to Form I-526 petitions do not constitute a rule of reason.

Second, plaintiffs argue that USCIS does not in fact adhere to the visa availability approach. *See* Opp. at 19. Plaintiffs make a range of allegations, some unsourced, about the operation in practice of Form I-526 adjudication. These include that (1) after USCIS increased the investment threshold from $500,000 to $900,000 in November 2020, *see supra* note 2, the stream of EB-5 visa applications "all but ended," decreasing from 2,000 applications per quarter to 21 applications in the period between January and March 2021, Opp. at 24; (2) approximately 90% or more of EB-5 applications are based on "Regional Center" investments, rather than direct investments, which require less extensive documentation, *see id.* at 24; Dkt. 29 at 1; Dkt. 31 at 1–2; and (3) USCIS did not adjudicate petitions based on Regional Center projects between June 30, 2021, and May 15, 2022, due to a statutory lapse in authorization,[9] *see* Opp. at 24; Dkt. 27 at 3; Dkt. 29 at 1; Dkt. 31 at 1. Based on these allegations, plaintiffs essentially suggest that it is inexplicable that, amid the drop in Form I-526 petitions and the lapse in authorization for Regional Center projects, USCIS has not yet adjudicated their Form I-526 petitions, which are

---

[9] Plaintiffs allege that between October and December 2021, USCIS decided only 61 petitions, "[p]resumably" all from direct investors, and that this volume indicates a case processing rate of "about one per work day for all 200 employees in the [Immigrant Investor Program Office] in this quarter." Dkt. 29 at 1.

17

based on direct investments.[10] *See* Dkt. 31 at 1 ("Defendants have not explained why the agency did not adjudicate Plaintiffs' petitions during this time-period since direct investment petitions were the only petitions 'available' for review and represent only 10% of the entire EB-5 petition backlog."). They note that their applications remain pending even though they "satisfy the visa availability approach" and "have a current priority date." Opp. at 19.

At the threshold, the bulk of these allegations do not appear in plaintiffs' Complaint, but are made in their opposition brief and subsequent letters. Although plaintiffs had the opportunity to amend their complaint as a matter of course after defendants filed their motion to dismiss, *see* Dkt. 23, they declined to do so. Regardless, even considering these allegations in their entirety, they do not show that USCIS's Form I-526 adjudication is not governed by a rule of reason. They indicate at most that USCIS's processing capacity for direct-investment petitions may have increased in certain months since plaintiffs filed their applications. But it is a speculative leap therefrom to conclude that USCIS does not follow its own announced processes in adjudicating Form I-526 petitions.[11] *Cf. Sheiner*, 2023 WL 2691580, at *7 (finding that similar allegations

---

[10] Plaintiffs develop this argument in part under the fourth *TRAC* factor—whether expediting the delayed agency action will impact competing agency priorities. Opp. at 23–24. As these allegations also implicate the "rule of reason" analysis, the Court addresses these arguments under the first factor.

[11] In support, plaintiffs cite *Lyons v. U.S. Citizenship & Immigration Services*, No. 21 Civ. 3661 (JGK), 2023 WL 144879 (S.D.N.Y. Jan. 10, 2023), which denied a motion to dismiss a similar unreasonable-delay claim arising from a Form I-526 petition. *See* Dkt. 27. The Court, while finding Judge Koeltl's opinion characteristically thorough and well-reasoned, finds *Lyons* inapposite. He there found it "premature" to conclude that USCIS's Form I-526 adjudication was governed by a rule of reason where plaintiff had "plausibly alleged otherwise," including by alleging that: (1) he came from an undersubscribed country; (2) "I-526 processing times have increased substantially while the number of I-526 petitions filed per year has declined" over multiple years; (3) USCIS "publicly and regularly" professed a goal to adjudicate petitions within six months of filing; and (4) the $3,675 filing fee may be used to timely process other applications. *Lyons*, 2023 WL 144879, at *3–5. Plaintiffs here have not made comparably comprehensive allegations as to USCIS's processes; their factual allegations, largely absent from

based on USCIS case statistics failed to support reasonable inference that it was not following visa availability approach).

Plaintiffs' claims also fail to account for similarly situated petitioners who also have current priority dates and are also waiting in line for review of their applications. *See, e.g., id.* at *6–7; *Cohen*, 2023 WL 2526105, at *4; *see also Palakuru*, 521 F. Supp. 3d at 51 ("[Plaintiff]'s arguments do not account for the possibility that many others in his situation . . . filed their petitions before he did."). Nor do they plausibly allege that similarly situated applicants have experienced shorter waiting periods. *Contra In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 420 (D.C. Cir. 2004) (finding delay unreasonable where agency's "dilatoriness is apparently . . . uncharacteristic of the relatively swift treatment it routinely gives similar petitions"). Given the lack of "adequately alleged irregularities," the Complaint simply suggests that "USCIS is managing a mountain of applications in a manner that follows a rule of reason under the first *TRAC* factor." *Cohen*, 2023 WL 2526105, *5 (quoting *Aydemir v. Garland*, No. 22 Civ. 100 (PAC), 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022)). The first factor thus strongly favors defendants.

---

their Complaint, instead pertain to application trends over shorter periods and only conclusorily state that USCIS diverges from the visa availability approach. *Cf. Cohen*, 2023 WL 2526105, at *5 n.6 (distinguishing *Lyons* where plaintiff did not make allegations of "years-long increase in processing times with a simultaneous[] decrease in petitions").

Likewise, *Hasou v. Kendall*, No. 20 Civ. 4516 (CBA), at 4–5 (E.D.N.Y. Nov. 29, 2022) (unreported), also cited by plaintiffs, does not assist their claims. The court there found that the plaintiff had raised sufficient factual questions about USCIS's use of the visa availability approach based on allegations that USCIS expedited Form I-526 petitions processed through the Appalachian Regional Center. *Id.* at 4–5. Here, however, plaintiffs do not claim to have invested in a Regional Center or allege such inconsistency in the handling of direct investment projects.

### 2.    Second *TRAC* Factor

The second *TRAC* factor provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason."[12]  *TRAC*, 750 F.2d at 80.  In plaintiffs' view, Congress has provided such a timetable for Form I-526 petitions through 8 U.S.C. § 1571, which states: "[I]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571.  They argue that USCIS has not adhered to this statutorily mandated six-month timeline with respect to their applications.  Opp. at 20–21.  Defendants counter that "courts within the Second Circuit and across the country have interpreted § 1571 . . . as neither mandatory nor conferring any enforceable right upon I-526 petitioners."  Mot. at 15 (citing cases).

On this factor, plaintiffs have the better of the argument.  Although there is no indication that Congress has dictated a timeline for the processing of Form I-526 petitions, the nonbinding language of § 1571 reflects a general "indication of the speed with which it expects the agency to proceed," *Saharia*, 2022 WL 3141958, at *6 (citation omitted).  As plaintiffs' applications have been pending for well beyond this nonbinding benchmark, the second *TRAC* factor weighs in plaintiffs' favor.  *See, e.g.*, *Cohen*, 2023 WL 2526105, at *5; *Lyons*, 2023 WL 144879, at *6–7; *Sheiner*, 2023 WL 2691580, at *7–8; *Saharia*, 2022 WL 3141958, at *5–6 (citing cases).  Importantly, however, Congress's precatory language "does not automatically render the delay in this case unreasonable," *Cohen*, 2023 WL 2526105, at *5 (citation omitted).  *Cf., e.g.*, *Uranga v.*

---

[12] Some courts consider the second factor alongside the first, *see, e.g.*, *Da Costa*, 2022 WL 17173185, at *8, but courts in this District generally consider the first and second *TRAC* factors separately.

*U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103–06 (D.D.C. 2020) (finding delay reasonable even where second factor weighed in plaintiff's favor).

### 3.    Third and Fifth *TRAC* Factors

The third and fifth *TRAC* factors—concerning whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay," *TRAC*, 750 F.2d at 80 — are often considered together, and the parties here likewise have briefed them together. *See, e.g.*, *Sheiner*, 2023 WL 2691580, at *8; *Saharia*, 2022 WL 3141958, at *6. "[A]nalysis of the third and fifth *TRAC* factors requires careful consideration and weighing of the circumstances of a case." *Lyons*, 2023 WL 144879, at *8 (noting that case law on the third and fifth *TRAC* factors within this District "underscore[s] the case-specific nature of the inquiry").

The Complaint alleges that because plaintiffs worked in healthcare during the COVID-19 pandemic and "risked their lives and health to treat Americans," they have endured great stress, which has been exacerbated by the uncertainty associated with waiting for the adjudication of their Form I-526 petitions. Compl. ¶ 37; *see also* Opp. at 21 (alleging the same). Plaintiffs attached to their opposition brief several studies and articles documenting the adverse health effects of stress caused by long-term uncertainty as to one's future and "fear of the unknown," as well as government press releases recognizing the negative effects of the COVID-19 pandemic on healthcare workers. Opp. at 11, 21–22. They note that because Kaur's Form I-526 petition remains pending, she has been unable to return to India to marry because doing so would force her to abandon her adjustment-of-status application. *Id.* at 12. The Complaint further alleges that the capital plaintiffs invested in connection with their EB-5 visa applications is especially in jeopardy given the fact that it is invested in "the high risk restaurant industry" and "due to uncertain economic conditions caused by high inflation and the war in Europe threatening the economy." Compl. ¶ 37. They note that in fiscal year 2022, the Department of State issued all

available visas in the category most sought by healthcare workers, and that USCIS suspended its expedite criteria for medical workers, whom it qualified as "essential critical infrastructure workers." Opp. at 22. They argue that the "same standard" should apply to their applications. *Id.* Defendants counter, *inter alia*, that the alleged prejudice is inherent in the adjudication process and does not warrant relief. Mot. at 17.

The Court treats as well-pled plaintiffs' claims as to the stressors and inconveniences to which they have been exposed. Importantly, however, the harms alleged here are largely ones "inherent to the application process," including the uncertainty as to the application's outcome and the risk that the financial investment on which the application is based will not be recouped. *E.g., Sheiner*, 2023 WL 2691580, at *9 (finding plaintiff's "purported prejudices" to be "inherent to the application process" where she alleged "uncertainty about her future which [set] her back from making choices about her life and career" and delays in "her ability to relocate, work, become a citizen of the U.S., and start other businesses"). This case thus differs from those in which courts have found showings strong as to the third and fifth factors based on individualized risks the delay had caused to the plaintiff's health, employment, and immigrant status. *See, e.g., Cohen*, 2023 WL 2526105, at *5–6 (finding third and fifth factors in plaintiff's favor where plaintiff alleged "adverse employment consequences" in the form of "special restrictions" on his employment and "travel limitations" that prevented him from attending a mandatory study abroad program); *Saharia*, 2022 WL 3141958, at *6–7 (finding third and fifth factors in plaintiff's favor where he alleged that delay put he and his wife "at risk of losing their jobs and being compelled to leave the United States"). The Complaint here does not allege that the

pending status of plaintiffs' applications has jeopardized either's career or ability to remain in the country, or materially increased their exposure to COVID-19 or other health risks.[13]

That said, the Complaint does plausibly allege that plaintiffs have experienced extended instability in their professional and personal lives as a result of USCIS's delay in adjudicating their Form I-526 petitions. In particular, plaintiffs allege, the more than 31-month delay between the applications and the filing of this lawsuit has inhibited their ability to travel to their home country. On this basis, the Court finds that the delay tips the third and fifth factors in plaintiffs' favor, albeit to only a slight degree. *See, e.g., Lyons*, 2023 WL 144879, at *8–9 (finding plaintiff had plausibly alleged "at least some prejudice" where he alleged "significant" and "adverse" effects of the delay "on [his] mental state and on his decisions regarding his life, family, and career" (citation omitted)).

### 4.    Fourth *TRAC* Factor

The fourth *TRAC* factor considers "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. "The agency is in a

---

[13] The Complaint alleges that plaintiffs have suffered pronounced stress on account of their work as healthcare workers during the COVID-19 pandemic. *See, e.g.*, Compl. ¶ 37; *see also* Opp. at 21 (alleging the same). But the Complaint does not allege that this stress, which appears to arise from the nature of their work, is any different than it would have been had plaintiffs not filed Form I-526 petitions. *Cf. Aydemir*, 2022 WL 4085846, *5–6 (rejecting as improper the requested prioritization of medical professionals' visa applications and concluding that the "prejudice resulting from delay . . . [was] ultimately insufficient to grant relief" even where plaintiff alleged that he was unable to find work as a medical professional because of USCIS's delay in adjudicating his asylum application). Because "giving [their] profession special weight would have the effect of prioritizing [visas] for medical professionals generally," *id.* at *6, and plaintiffs have provided no legal basis for such a prioritization, the Court declines to grant relief on this ground.

Relatedly, plaintiffs imply that because USCIS has expedited employment authorization for healthcare workers due to their role as "essential critical infrastructure workers," their Form I-526 petitions should also be expedited. Opp. at 22. This argument is unavailing. Presumably, USCIS expedited employment authorizations for healthcare workers to expand the pool of such during the pandemic. The Complaint does not allege that the delay in processing plaintiffs' petitions has inhibited them from continuing to work in the healthcare industry.

unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). As a result, in many cases, courts have found "no basis for reordering agency priorities." *Palakuru*, 521 F. Supp. 3d at 52 (quoting *In re Barr*, 930 F.2d at 76). Courts consider this factor, alongside the first, among the "most important," *Cohen*, 2023 WL 2526105, at *7.

Defendants argue that this factor "weighs heavily in favor of the Government" because granting the relief sought would require USCIS to reorder its priorities and allow plaintiffs' Form I-526 petitions to be expedited ahead of others who may have been waiting longer and, for whatever reason, were unable to file suit. Mot. at 20 (citation omitted).

The Court is constrained to agree, and finds the fourth factor strongly to favor the Government. The Complaint acknowledges that plaintiffs each have a "current" priority date—in other words, that a visa is available for each such EB-5 applicant from India. Compl. ¶ 38. And, as explained above, the Court has declined to credit plaintiffs' claims that USCIS does not adhere to the visa availability approach, under which Form I-526 petitions for which a visa is available are processed on a first-in, first-out basis. It follows that plaintiffs' Form I-526 petitions are pending adjudication of earlier-filed petitions from others for whom a visa is available, such that a court order compelling USCIS to process their applications now "would put [them] ahead in the queue of those similarly situated." *Saharia*, 2022 WL 3141958, at *8 (citation omitted). Furthermore, plaintiffs have not claimed any "net gain" from expediting consideration of their applications, *In re Barr*, 930 F.2d at 75, that USCIS has "vindictively singled [them] out for especially bad treatment," *id.*, or that "officials not working on [their]

matters . . . were just twiddling their thumbs," *Mashpee*, 336 F.3d at 1101–02 (citation and alterations omitted).

Accordingly, because granting an order to compel adjudication of plaintiffs' applications would divert agency resources from other presumably qualified applicants, the Court, like others facing similar claims, finds the fourth factor to favor dismissing the Complaint. *See, e.g.*, *Sheiner*, 2023 WL 2691580, at *9 ("Courts have found that when granting a plaintiff relief would simply move them to the front of the line, the fourth factor weighs in favor of the government."); *Cohen*, 2023 WL 2526105, at *6 (finding fourth factor in Government's favor where plaintiff "appears only to seek to jump ahead of those without the capacity to sue"); *Saharia*, 2022 WL 3141958, at *8 (finding fourth factor in Government's favor where plaintiff "failed to provide a sufficient reason why the Court should order USCIS to give Plaintiff preferential treatment over other similarly situated applicants"); *cf. Xiaobin Xu v. Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("[T]he competing-priority issue is weighty. There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage.").[14]

### 5.    Sixth *TRAC* Factor

The sixth *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (citation omitted). "[T]he issue of impropriety intersects with [factor] four's sensitivity to the agency's legitimate priorities," because where "the agency has manifested bad

---

[14] *But see Lyons*, 2023 WL 144879, at *7 (finding fourth *TRAC* factor neutral where on the face of the complaint there was no evidence that resolving plaintiffs' claim would in fact allow "plaintiff to jump the line at the expense of others").

faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities." *In re Barr*, 930 F.2d at 76.

As to this factor, the Complaint alleges that "Plaintiffs each paid the USCIS a large user fee of $3,675 to decide their I-526 petitions," and USCIS has not rendered "the service for which they charged Plaintiffs." Compl. ¶ 39. These allegations do not plausibly suggest impropriety on the part of USCIS. The sixth *TRAC* factor is therefore neutral. *See, e.g., Sheiner*, 2023 WL 2691580, at *10 (finding unavailing allegations that "reduction in case processing was intentional"); *Lyons*, 2023 WL 144879, at *9 (finding plaintiff's "nonconclusory allegations . . . do not permit a plausible inference of bad faith or impropriety"); *Cohen*, 2023 WL 2526105, at *7; *Saharia*, 2022 WL 3141958, at *9.

In sum, the first and fourth *TRAC* factors weigh strongly in defendants' favor; the second, third, and fifth *TRAC* factors weigh in plaintiffs' favor, albeit modestly; and the sixth *TRAC* factor is neutral. Analyzing the factors together, and mindful that under the case law the first and fourth factors are most important, the Court concludes that the Complaint does not sufficiently allege an unreasonable delay so as to warrant relief under the APA. The prejudice to plaintiffs from the delay in adjudication of their applications, although real, does not rise to the level of that generally alleged in the subset of cases in which courts sustained unreasonable-delay claims. *See, e.g., Saharia*, 2022 WL 3141958, at *7, *9 (denying motion to dismiss where plaintiff alleged that delay caused "potential loss of employment and the potential of being forced to leave the United States"). And plaintiffs' allegations as to the first and fourth *TRAC* factors fall

far short of alleging that USCIS's adjudication process is not governed by a rule of reason or that there is justification for reordering agency priorities to expedite plaintiffs' applications.[15]

Accordingly, in line with the vast majority of courts faced with cases from similarly situated plaintiffs, the Court dismisses plaintiffs' APA claim. *See, e.g., Sheiner*, 2023 WL 2691580, at *10 (denying relief where application pending 37 months as of decision, and first, third, fourth, and fifth factors weighed in favor of USCIS; second weighed in plaintiff's favor; and sixth was neutral); *Cohen*, 2023 WL 2526105, at *7 (denying relief where application pending 41 months as of decision and "most important" factors, first and fourth, weighed in favor of defendant and "other factors at best only slightly favor Plaintiff"); *Punt v. U.S. Citizenship & Immigr. Servs.*, No. 22 Çiv. 1218 (RC), 2023 WL 157320, at *6 (D.D.C. Jan. 11, 2023) (finding first and fourth factors favored denying relief); *Palakuru*, 521 F. Supp. 3d at 52–54 (same); *Olofin*, 2023 WL 1860962, at *5 (same); *Mukkavilli v. Jaddou*, No. 22 Civ. 2289 (TNM), 2023 WL 4029344, at *16 (D.D.C. June 15, 2023) (same); *Da Costa*, 2022 WL 17173186, at *10–11 (same); *Thakker*, 2021 WL 1092269, at *8 (same).

The dismissal, however, is without prejudice. Plaintiffs' APA claims necessarily will grow stronger each month that their petitions remain pending following the date of this decision. And plaintiffs can fairly argue to have materially stronger claims as the delay in acting upon their

---

[15] *Contra Lyons*, 2023 WL 144879, at *3, *9 (denying in part motion to dismiss where plaintiff alleged as to first factor "substantial increase" in median processing time during same period as "stead[y] decline[]" in applications and that USCIS "publicly and regularly" professed six-month goal for adjudication of petitions); *In re Pub. Emps. for Environ. Responsibility*, 957 F.3d 267, 274–76 (D.C. Cir. 2020) (finding 19-year delay unreasonable where delay was "primarily attributable to interagency conflict, not financial or personnel shortages" and granting relief would not necessarily "reorder the agencies' priorities"); *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012) (per curiam) (in mandamus context, finding *TRAC* factors favored granting relief given "specificity and relative brevity of the 180-day deadline" for petition to revoke foreign terrorist organization designation, which "manifest[] the Congress's intent that the Secretary act promptly").

petitions reaches or exceeds the median processing time for such claims.  Upon determining that their claims have materially strengthened, plaintiffs will be at liberty to file an amended complaint in this lawsuit, or in a separate one.

### B.     Mandamus Claim

Plaintiffs also seek mandamus relief under 28 U.S.C. § 1361.  Compl. ¶ 1.  Under 28 U.S.C. § 1361, a federal court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  Mandamus relief is reserved for extraordinary circumstances, "intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Mandamus relief may be awarded "only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 1333 (2d Cir. 2008).  Where mandamus relief is duplicative of an APA claim, it must be dismissed. *See Sheiner*, 2023 WL 2691580, at *10; *Benzman*, 523 F.3d at 132–33 (upholding dismissal of plaintiffs' claim for mandamus where it duplicated the APA count, "both as to the underlying allegedly mandatory duties and as to the relief sought").  Further, a "[p]laintiff cannot pursue a Mandamus claim when an adequate remedy is available under the APA . . . This is true even though Plaintiff failed to adequately plead that alternative remedy." *Cohen*, 2023 WL 2526105, at *7 (internal citations omitted).

As plaintiffs sought, and failed to secure, identical relief through their APA claim, their mandamus claim is unavailing.  Accordingly, the Court dismisses this claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion and dismisses the Complaint, without prejudice. Recognizing the possibility of an amended complaint, the Court will retain jurisdiction over this case.

The Court further orders that the parties file, every four weeks starting from the date of this decision, joint updates as to the status of plaintiffs' Form I-526 petitions, so as to enable plaintiffs and the Court to monitor the agency's assurances that it is proceeding as diligently as possible, and to enable the Court to determine whether agency action has occurred so as to justify closing this case. *See Mashpee*, 336 F.3d at 1102 ("[I]f the district court is unable to conclude that the delay to date has been unreasonable, then it may nevertheless retain jurisdiction over the case in order to monitor the agency's assurances that it is proceeding as diligently as possible with the resources available to it.").

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 1, 2023
    New York, New York

29